IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CORALYN GRUBBS, LOUIS SMITH, ALI RIVERA, and SEAN MILLER, individually and on behalf of all other persons similarly situated, | : : : : | |
| Plaintiffs, | : : | Case No. 92-cv-2132 (GBD) |
| v. | : : | |
| HOWARD SAFIR, in his official capacity as Police Commissioner of the City of New York; NEW YORK CITY POLICE DEPARTMENT; BERNARD KERIK, in his official capacity as Commissioner of Correction of the City of New York; NEW YORK CITY DEPARTMENT OF CORRECTION; RUDOLPH GIULIANI, in his official capacity as Mayor of the City of New York; and THE CITY OF NEW YORK, | : : : : : : : : : : | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION SEEKING ENFORCEMENT OF THIS COURT'S ORDERS, MODIFIED INJUNCTIVE RELIEF, AND A FINDING OF CIVIL CONTEMPT** |
| Defendants. | : : : | |

## PRELIMINARY STATEMENT

By this Motion, Plaintiffs seek to hold Defendants the City of New York and the Department of Correction (together, the "City") in contempt of this Court's orders prohibiting the use of surveillance cameras in the attorney-client interview rooms in the criminal courthouse in Staten Island.  Contrary to those orders, and contrary to numerous representations made by the City to the Plaintiffs and the Court, <u>those cameras have been on and recording</u>, as the City recently disclosed to Plaintiffs' counsel.  Plaintiffs also seek modified injunctive relief to ensure that this violation of the Court's orders (and the Sixth Amendment) does not happen again.

The Parties last appeared before the Court in this case on October 20, 2015.  At that hearing, the Court granted Plaintiffs' request for a preliminary injunction and ordered the Defendants the City of New York and the Department of Correction to refrain from continuous surveillance filming in the attorney-client interview rooms in the Staten Island criminal courthouse, finding that such filming likely violated the Sixth Amendment and the 1999 Consent Order entered in this case.  (West Decl.,[1] Ex. A (Oct. 20, 2015 Hearing Tr., 59 – 63))  The Court made clear that it would give the City the opportunity to present evidence at a hearing to justify lifting the injunction "as quickly as [the City] want[ed] to move."  <u>Id.</u> at 65:6-7.  Rather than defend its position with evidence, however, the City immediately stated its intention to resume filming in the attorney-client rooms "one minute on, one minute off," thereby supposedly avoiding the Court's prohibition of "continuous" filming.   Plaintiffs, taken aback by the City's incautious approach to interpreting an order of this Court, protested in a response letter that the City's plan was inconsistent with the injunction.  The Court then immediately ordered that the cameras be turned off completely and ordered the City to appear and show cause why a

---

[1] As used herein, "West Decl." refers to the the March 21, 2017 Declaration of Colin T. West, submitted herewith.

preliminary injunction should not be entered to that effect. The City was able to defer that hearing only by stipulating in a letter (which the Court so-ordered) that the parties would engage in settlement discussions and that the cameras would remain off in the interim.

After settlement discussions concluded unsuccessfully in early February 2016, the City did not seek relief from this Court's injunction for nearly a year. In their January 2017 Motion (filed provisionally under seal), the City stated that it continued to honor the Court's injunction but that it now sought relief from such injunction. After Plaintiffs served discovery requests on the City, the City abruptly and inexplicably withdrew its motion. After numerous inquiries, the City disclosed on March 2, 2017 that the cameras at issue had in fact been turned on and were recording during some period of time after October 20, 2015 when this Court entered its preliminary injunction.

This is an unmistakable violation of the Court's October 20, 2015 preliminary injunction and the Court's November 4, 2015 so-ordered stipulation. It is also a violation of the 1999 Settlement Order, as this Court already found that the use of cameras likely violated such Order. For these violations, the City should be held in civil contempt, with appropriate remedies. Moreover, given the Court's earlier conclusion that the use of the cameras likely violated the Sixth Amendment and the 1999 Settlement Order (Dkt. 61), Plaintiffs request that the Court modify its injunctive relief to require the physical removal of the cameras, which is the only way to ensure that the violations do not reoccur.

**BACKGROUND**

This case was commenced in 1992 as a putative class action to address numerous violations of the constitutional rights of detained defendants in New York City awaiting arraignments or appearances in criminal cases. The case was brought on behalf of "persons who

are, or will in the future be, detained by defendants in New York City police precincts, central booking facilities, and criminal court buildings while awaiting their arraignments or appearances in other proceedings in connection with potential criminal prosecutions against them." Grubbs v. Safir, 92-cv-2132, 1999 WL 20855, at *1 (S.D.N.Y. Jan. 13, 1999).  The Court (Chin, J.) granted class certification on January 19, 1996. Id. at *4.

The Plaintiffs moved for summary judgment. Among the claims on which Plaintiffs sought summary judgment was Plaintiffs' claim that "the denial of private attorney-client interview facilities in Richmond County violates plaintiffs' Sixth Amendment right to counsel." Id. On summary judgment, the Court concluded that there was no factual dispute that "[p]rivate attorney-client consultation facilities are not available in the Richmond County Criminal Court." Id. at *6. The Court concluded that Plaintiffs had a constitutional right to counsel at their arraignments, and that this right included a right to confer with counsel immediately prior to arraignments. Id. at *7. On the question of whether the Sixth Amendment required that such conferences be private, the Court reasoned as follows:

> As to this issue of privacy, I do not accept defendants' argument that speaking to one's attorney in the presence of other detainees as well as court officers (who are also in the vicinity) is sufficient for every detainee. The assistance of counsel would be rendered meaningless if that counsel's client were to be inhibited from speaking openly and freely. The existing condition in Richmond County may well prevent a plaintiff from speaking openly and freely to her/his counsel prior to a court appearance.

Id. at *7. The Court thus concluded that Defendants were required to provide access to private attorney client consultations, but deferred a decision on the remedy until after a trial: "Because there are a number of facts and issues that the Court must consider in fashioning a remedy for this claim, however, I do not here decide what defendants must do to provide access for private attorney-client consultations in Richmond County." Id. at *7.

Before a trial occurred, however, the parties reached a settlement. With respect to Judge Chin's findings concerning the lack of private spaces for attorney-client interviews at the Richmond County Criminal Court, the settlement agreement addressed these findings at paragraph 11: "The City shall use its best efforts to construct or install, by August 31, 1999, an interview booth for pre-arraignment detainees to consult privately with counsel in the courthouse at 67 Targee Street, Staten Island, New York." The settlement agreement was approved and adopted by Judge Chin on September 24, 1999 (Dkt. No. 61) as the judgment of the Court (the "Settlement Order").

On September 28, 2015, a new courthouse opened at 26 Central Avenue, Staten Island. The new courthouse replaced, among other courts, the Richmond County Criminal Court building at 67 Targee Street. The new courthouse is equipped with surveillance cameras in the pre-arraignment interview booths that have the ability to monitor the detainee's side of the booth. Prior to the opening of the new courthouse, attorneys for the Legal Aid Society ("Legal Aid"), having taken note of those surveillance cameras in tours of the facility, strongly objected to the presence of such cameras in writing to counsel for the City, demanding that such cameras be removed. The City refused to remove or disable the cameras. (Luongo Aff.[2] at ¶¶ 2-4)

On October 1, 2015, this Court signed an Order to Show Cause, filed by the Plaintiffs, seeking a preliminary injunction that the cameras be removed and, in the interim, a temporary restraining order barring the city from operating the cameras. At the October 20, 2015 hearing on the Order to Show Cause, the Court granted a preliminary injunction in favor of the Plaintiffs, but did not expressly order the removal of the cameras:

> I'm going to issue the preliminary injunction. I find that there's a likelihood of success on the merits of irreparable injury that exists given the process as it is now…My position would be that continuous filming of attorney-client

---

[2] As used herein, "Luongo Aff." refers to the March 17, 2017 Declaration of Justine M. Luongo, submitted herewith.

> consultation is in violation of the agreement -- appears to be in violation of the agreement [the 1999 Settlement Order (Dkt. 61)] and would possibly and likely be a 6th Amendment violation…If the city can demonstrate that this continuous filming of attorney-client communication is appropriate and is consistent with the 6th Amendment, then that preliminary injunction will be lifted…So I'm going to issue a preliminary injunction that prohibits the continuous filming of attorney-client consultation in these interview rooms.

(West Decl., Ex. A (Oct. 20, 2015 Hearing Tr., 59:14 – 63:5))[3] The Court further stated that it would "give the parties as prompt a hearing as possible in order to make that final determination," and, to the City, the Court stated, "I will move as quickly as you want to move to resolve this issue." Id. at 59:19-21; 65:6-7.

Rather than proceed to a hearing to defend its position with evidence, however, the City notified the Court and the Plaintiffs of the City's intention to resume the operation of the cameras "one minute on, one minute off," with no warning to the detainees when the camera would be on. (Dkt. No. 83)  In an October 30, 2015 letter to the Court, the Plaintiffs explained why the City's plan was inconsistent with the Court's ruling. (Dkt. No. 84)  The same day, the Court entered another Order to Show Cause, setting a hearing for November 5 to determine whether a preliminary injunction should be entered barring the City from any operation of the cameras, and, in the interim, temporarily restraining the City from any such operation. (Order to Show Cause for Preliminary Injunction and Temporary Restraining Order. (Dkt. No. 86))

Rather than go forward with the hearing, the parties jointly notified the Court by letter on November 4, 2015 of their intent to engage in settlement discussions. The parties agreed to update the Court as to the status of their discussions on November 24, 2015 and the City

---

[3] On October 20, 2015, the Court supplemented its oral ruling with a written order entered on the docket: "For the reasons stated on the record at the October 20, 2015 conference, ***while this action is pending or until otherwise ordered by this Court***, the City of New York and the New York City Department of Corrections are temporarily enjoined from continuous minute-by-minute recording or monitoring by camera of attorney-client private consultations at the Richmond County Criminal Court attorney-client interview rooms. (Dkt. 82) (emphasis added)

represented that "[i]n the interim the Defendants will continue to refrain from any video monitoring or recording in the prearraignment attorney-client interview rooms in the Richmond County Courthouse, unless otherwise ordered by the Court." The parties' November 4, 2016 joint letter was so-ordered by the Court. (Dkt. No. 88) The parties continued to engage in settlement discussions over the ensuing months, and the November 24, 2015 control date was extended three times, with the last such date set for February 26, 2016. (Dkt. No. 93) Settlement discussions between the parties terminated in early February 2016. At the time, the City indicated that it intended to seek relief from the Court in the near term.

During and after the settlement discussions between the parties, the City confirmed to the Plaintiffs numerous times that the cameras would remain off absent further order of this Court. (Luongo Aff. ¶ 9) In fact, when attorneys for Legal Aid observed the installation of cameras in other facilities in other boroughs, in areas where Legal Aid attorneys meet privately with their clients, the City also confirmed that such other cameras would not be turned on until the dispute over the cameras at issue in this case was resolved. (Luongo Aff. ¶ 10)

The City did not seek any relief from this Court's preliminary injunction for nearly one year after settlement discussions ended. On January 12, 2017, the City filed a Motion for Declaratory Relief, Or, Alternatively, For an Order Dissolving the Preliminary Injunctive Relief Orders (the "City's Motion"). The City's Motion was filed provisionally under seal and thus was not placed on the docket. In essence, the City's Motion sought the Court's permission to turn the cameras back on.[4] In the Memorandum in Support of the City's Motion, the City acknowledged the existence of the preliminary relief granted on October 20, 2015 and October 30, 2015, as set forth above. In reference to those orders, the City stated that "the City (including the DOC) continues to honor such orders." (West Decl., Ex. B (Excerpt of Memorandum in Support of the

---

[4] The City's Motion proposed to use "masking technology" to block a portion of the camera view.

City's Motion, 4))   The City's Motion was accompanied by three declarations submitted by officers of the Department of Correction. One such declaration referred to "the Court's order last year that resulted in the cameras being turned off."  (West Decl., Ex. C (Excerpt of Declaration of Wayne Allen, 4-5))  The other declarations contained similar language.[5]

On January 27, 2017, Plaintiffs served the City with discovery requests.  One of Plaintiffs' six interrogatories stated: "State whether You have within your custody, possession, or control any videos of detainees meeting with their attorneys in the attorney-client interview rooms at the Courthouse."  (West Decl. Ex. F (Plaintiffs' Interrogatories to Defendants, 4)) Plaintiffs expected that the City would respond in the negative to this Interrogatory, because any videos taken prior to the Court's October 2015 orders should have been destroyed, as the City represented in the October 2015 proceedings that any such videos would be destroyed within 90 days.  (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Dkt. No. 79] at 1)

On February 24, 2017, before responding to any of Plaintiffs' discovery requests, counsel for the City abruptly informed Plaintiffs that the City would be withdrawing the City's Motion, but would not explain why.  On February 27, by letter to the Court, the City withdrew the City's Motion without explanation.  The same day, Plaintiffs' counsel asked counsel for the City to confirm that the cameras in the attorney-client interview rooms in the Richmond County courthouse (1) are currently turned off; (2) have not been turned on since the Court's order of October 30, 2015; and (3) will not be turned back on without further order of the Court.  Counsel for the City confirmed items 1 and 3, but refused to confirm item 2.  (West Decl., Ex. G (Feb. 27,

---

[5] West Decl. Ex. D (Excerpt of Declaration of Frank Sacco, 2) ("I am advised by my counsel that the Court preliminarily enjoined the use of the video cameras in the pre-arraignment attorney-client interview booths at the SI Courthouse."); Id., Ex. E (Excerpt of Declaration of Turhan Gumusdere, 2) ("I have also been advised by my counsel that last fall, the Court preliminarily enjoined the use of the video cameras in the pre-arraignment attorney-client interview booths at the SI Courthouse.").

2017 email from City's counsel))  On a March 2 telephone call, counsel for the City confirmed what Plaintiffs' counsel then suspected:  Notwithstanding the Court's orders, and the City's numerous representations, **the cameras have in fact been on and recording** during some period of time since the Court's October 20, 2015 Order.  Other than asserting that the operation of the cameras since October 20, 2015 was inadvertent and that the cameras were turned off as of February 17, 2017, the City has yet to confirm to the Plaintiffs most of the relevant details relating to the operation of the cameras, including the dates that such cameras were on and recording, whether live video was displayed on any monitors, and the circumstances under which the cameras were turned on and set to record.   The City has, however, informed Plaintiffs that all four of the cameras at issue were on and recording for some period of time after October 20, 2015.  The City further informed Plaintiffs that one of the cameras was on and recording from November 20, 2015 to June 20, 2016, and possibly again thereafter.  (West Decl., Ex. H (March 8, 2017 Email from Janice Birnbaum to Colin West))  If that camera was indeed disabled on or about June 20, 2016, it is unclear how or why that disabling took place without notification to the Plaintiffs or to the Court that the camera had been operating in violation of the Court's Orders and the City's representations.   Further, Plaintiffs understand that warning signs that were previously posted to warn detainees about the camera monitoring were, at some point, removed.

## ARGUMENT

**I.  THE COURT SHOULD GRANT PLAINTIFFS' APPLICATION FOR MODIFIED PRELIMINARY INJUNCTIVE RELIEF**

As set forth above, this Court issued a preliminary injunction on October 20, 2015, barring the City's "continuous filming" of the cameras in the attorney-client interview booths in the Richmond County courthouse.  The City then certified to the Court that it would not operate the cameras pending a control date when the parties would report back to the Court, thereby

deferring a hearing on whether any filming at all would be permitted.  The Court so-ordered the City's certification.  The City then confirmed to the Plaintiffs numerous times that the cameras would not be turned on absent further order of the Court.  Finally, in the City's Motion filed (under seal) on January 12, 2017, the City represented to the Court that it "continues to honor [the Court's] orders" barring the use of the cameras.  As set forth above, however, in violation of the Court's orders and the City's own representations, the City continued to use the cameras to film and record after October 20, 2015.  Based on this record, as set forth below, Plaintiffs request that the Court modify its preliminary injunction by ordering that the cameras be physically removed.  Plaintiffs request further that the City be held in contempt of the Court's October 20, 2015 and November 4, 2015 Orders, as well as the 1999 Settlement Order.

> **a. Plaintiffs' Have Already Established Entitlement to Injunctive Relief Barring the Use of the Cameras**

On October 13, 2015, Plaintiffs filed an Order to Show Cause seeking enforcement of the 1999 Order and supporting papers ("Plaintiffs' 2015 Motion").  In Plaintiffs' 2015 Motion, Plaintiffs set forth the legal standards applicable to preliminary injunctions, which need not be repeated here.  (West Decl. Ex. I (Memorandum of Law In Support of Plaintiffs' 2015 Motion) [Dkt. No. 76] at 7))  In Plaintiffs' 2015 Motion, Plaintiffs established that they were likely to succeed on the merits of their argument that the use of the cameras violated the 1999 Order and the 6th Amendment. Id. at 7-12.  Plaintiffs' 2015 Motion also established the irreparable harm that would result from the use of the cameras. Id. at 12-14.   At oral argument on October 20, 2015, in granting the preliminary injunctions, the Court agreed with the Plaintiffs:

> My position would be that continuous filming of attorney-client consultation is in violation of the agreement -- appears to be in violation of the agreement and would possibly and likely be a 6th Amendment violation.

(West Decl., Ex. A (Oct. 20, 2015 Hearing Tr., 59:22-25))  Since that Order was entered, the

City has made no attempt to rebut Plaintiffs' showing.

### b. The City's Violation of the Court's Orders and The City's Own Representations Establish that the Appropriate Preliminary Injunctive Relief Is the Removal of the Cameras

As set forth above in the Background, the cameras continued to operate and record despite the Court's Orders and the City's assurances to the contrary. In fact, it appears that the only reason the Plaintiffs became aware of such violations is the Plaintiffs' service of discovery requests that revealed the violations. See, supra at 7. The City's failure to comply with the Court's Orders and the City's representations, even if unintentional as the City claims, demonstrates that the appropriate preliminary injunctive relief is the removal of the cameras. Simply, in light of the record, the removal of the cameras is the only way to ensure that the cameras are not monitoring and recording attorney-client interviews, which the Court has already determined likely violates the 6th Amendment and the 1999 Order. In the 18 months since the Court entered its preliminary injunction, the City has not contradicted this Court's finding with evidence, and indeed has made no attempt to do so, apart from a now-withdrawn motion. This is despite the Court's invitation to the City to proceed with a hearing "as quickly as you want to move." (West Decl., Ex. A (Oct. 20, 2015 Hearing Tr., 65:6-7))

If the modified preliminary injunction is granted, the City can still attempt to come forward with evidence to show that (1) its video surveillance of attorney-client interviews does not violate the 1999 Order or the Sixth Amendment, and (2) the City's representations concerning the limitations of the surveillance technology (e.g., the lack of audio recording) should be accepted by the Court, notwithstanding its earlier violations. Unless and until the City makes such a showing, however, the cameras should be removed. If the City's recent representations are accurate, the cameras are currently turned off and will remain turned off absent further order of the Court. Therefore, there can be no dispute that the cameras do not

currently serve any legitimate security purpose, and their continued presence in the attorney-client interview booths can only serve to deter open communications between attorneys and clients.  And whatever hesitation the Court may have had about whether a detainee's distrust of the City's representations would be rational,[6] Plaintiffs submit that, in light of recent developments, a detainee might very well reasonably conclude that he or she could not accept the City's representations that the cameras are currently off.

There is thus no reason why the cameras should remain in the interview rooms, and whatever minimal costs may be associated with the removal of the cameras are outweighed by (1) the need for assured privacy in the booths and (2) the severity of the City's violations of this Court's orders.

## II.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR CONTEMPT AND AWARD SANCTIONS FOR THE CITY'S VIOLATION OF THE COURT'S ORDER

A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  Paramedics Electromedicina Comer-Cial, Ltda. v. GE Medical Systems Info. Tech., Inc., 369 F.3d 645, 655 (2d Cir. 2004) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)).  The violation need not be willful to withstand a motion for contempt.  Paramedics, 369 F.3d at 655; Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 59 (2d Cir. 1984); Utica College v. Gordon, 2010 WL 3157169, at *2 (2d Cir. 2010).

---

[6] At the October 20, 2015 hearing, in response to Plaintiff's counsel's assertion that a detainee might reasonably distrust the City's assertion that the audio function of the cameras was disabled, the Court questioned whether such distrust would be rational or whether it could serve as a basis to conclude that free and open communications between attorney and client were inhibited.  (West Decl., Ex A (Oct. 20, 2015 Hearing Tr.) at 9:6 – 10:3)

At the October 20 hearing, the Court issued the preliminary injunction prohibiting the continuous filming of the attorney-client consultations in the interview rooms. (West Decl., Ex A (Oct. 20 Hearing Tr., 63:3-5))   Then, on October 30, 2015, the Court issued another Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, ordering, among other things, that the Plaintiffs were "temporarily restrained from recording or monitoring by camera any attorney-client private consultations at the Richmond Country Criminal Court attorney-client interview rooms." (Dkt. No. 86) On November 4, the Court so-ordered a stipulation that included a representation that, "in the interim [pending a November 24, 2015 control date that was extended to February 26, 2016], the City will continue to refrain from any video monitoring or recording in the prearraignment attorney-client interview rooms in the Richmond County Courthouse, unless otherwise ordered by the Court." (Dkt. No. 88)

By operating all four cameras after October 20, 2015, and by operating at least one of the cameras November 20, 2015 to June 20, 2016, the City clearly violated the October 20, 2015 preliminary injunction and the November 4, 2015 So-Ordered Stipulation.  The apparent continuous filming also violated the 1999 Settlement Order (Dkt. 61), as the Court already determined appeared to be the case at the October 20, 2015 hearing. See, supra, at 4-5.   To make matters worse, the City confirmed that the cameras, when operating, were set to record. (West Decl., Ex. H (March 8, 2017 Email from Janice Birnbaum to Colin West))  Although the exact circumstances of the video surveillance and recording in violation of the Court's Orders are unclear, what is clear is that the City did not diligently attempt to comply with the Court's order barring use of the cameras in the attorney-client interview rooms.  One camera was allowed to remain on and recording over a period of at least seven months, if not longer, and the other three cameras were also on and recording for some period after the October 20, 2015 Order.  Indeed, it

is likely that Plaintiffs would have never become aware of the status of the cameras if it were not for the Plaintiffs' discovery requests issued to the City requesting information about camera footage.

Any claim by the City that the violation was inadvertent (though no evidence to support such an assertion has been offered to date) would not be relevant to whether the City should he held in civil contempt.  <u>See</u> <u>Paramedics</u>, 369 F.3d at 655.  Clearly, the City did not adequately ensure that the Court's Orders were complied with, and the Orders were in fact violated.  Thus, the Court should find the City in civil contempt of the October 20, 2015 and November 4, 2015 Orders, as well as the 1999 Settlement Order, and order an appropriate remedy, including (1) the appointment of an independent monitor, to be proposed by Plaintiffs and approved by the Court, to inspect cameras in all other Department of Correction facilities where attorneys meet privately with their clients to ensure that such cameras are not operational, as the City has represented to Plaintiffs, and (2) Plaintiffs' reasonable attorneys' fees associated with these proceedings.  Further, Plaintiffs respectfully submit that the City's violation of the Court's orders should further weigh in favor of granting the requested modified injunctive relief.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order (1) modifying this Court's October 20, 2015 preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), to require the removal of all surveillance cameras from the attorney-client interview rooms in the Richmond County Criminal Court; (2) finding the City of New York and the New York City Department of Correction in contempt of this Court's October 20, 2015 Preliminary Injunction, this Court's November 4, 2015 So-Ordered Stipulation, and the

September 24, 1999 Order Approving Settlement in this action and ordering appropriate remedies, and (3) granting such other relief as the Court deems just and proper.

Dated:  March 20, 2017
       New York, New York

Respectfully submitted,

/s/ *Cynthia Conti-Cook*

Cynthia Conti-Cook
William Gibney
THE LEGAL AID SOCIETY
Criminal Defense Practice
Special Litigation Unit
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3419


Colin T. West
Priya Srinivasan
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200


*Attorneys for Plaintiffs*