Civil Action No. 92 CV 2132 (GBD)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORALYN GRUBBS, *et al.*,

                                                                               Plaintiffs,

- against -

LEE BROWN, in his official capacity as Police Commissioner of the City of New York, *et al.*,

                                                                               Defendants.

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION SEEKING ENFORCEMENT OF THIS COURT'S ORDERS, MODIFIED INJUNCTIVE RELIEF, AND A FINDING OF CIVIL CONTEMPT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
   *Attorney for Defendant City of New York*
   *100 Church Street*
   *New York, N.Y. 10007*

   *Of Counsel: Janice L. Birnbaum*
   *Tel: (212) 356-2085*
   *Matter No. 2015-028062*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL ARGUMENT

    POINT I
          SINCE DEFENDANT PURGED THE ORDER VIOLATION, THE COURT
          SHOULD NEITHER ISSUE A CONTEMPT CITATION NOR GRANT
          ADDITIONAL RELIEF .................................................................................... 6

          A.      The 1999 Stipulation and Order of Settlement .......................................... 8

          B.      The Preliminary Injunction dated October 20, 2015 and the Adjournment
                Request dated November 4, 2015 ............................................................... 9

          C.      Defendant has purged the order violation ................................................ 11

CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*Benjamin v. Jacobson,* 172 F.3d 144 (2d Cir.),
    *cert. denied sub nom, Benjamin v. Kerik,* 528 U.S. 824 (1999) ................................ 9

*Benjamin v. Fraser,* 2002 U.S. Dist. LEXIS 18342 (S.D.N.Y. 2002) ............................. 7

*Benjamin v Kerik,* 1999 U.S. Dist. LEXIS 3980 (S.D.N.Y. 1999) .................................. 7

*Fellers v. U.S.,* 540 U.S. 519 (2004) .............................................................................. 11

*Gideon v. Wainwright,* 372 U.S. 335 (1963) ................................................................ 11

*Grubbs v. Brown,* 92 Civ. 2132 (S.D.N.Y.) ............................................................... 3, 8

*In re: Various Grand Jury Subpoenas,* 2017 U.S. Dist. LEXIS 50439
    (S.D.N.Y. April 3, 2017) ............................................................................................ 7

*Miller v. French,* 530 U.S. 327 (2000) ..................................................................... 10, 12

*Panix Promotions, Ltd. v. Lewis,* 2004 U.S. Dist. LEXIS 3504 (S.D.N.Y. 2004) ....... 6, 7

*People v. Johnson,* 27 N.Y.3d 199 (2016) .................................................................... 11

*United States v. Solnin,* 2015 U.S. Dist. LEXIS 144130 (E.D.N.Y. Oct. 23, 2015) ..... 11

*Weatherford v. Bursey,* 429 U.S. 545 (1977) ............................................................... 11

**FEDERAL AUTHORITIES**

Constitution, Sixth Amendment ...................................................................................... 10
Prison Litigation Reform Act, 18 U.S.C. § 3626 ..................................................... *passim*
18 U.S.C. § 3626(a)(1) ..................................................................................................... 10
18 U.S.C. § 3626(a)(1)(A) ......................................................................................... 10, 12
18 U.S.C. § 3626(a)(2) ......................................................................................... 3, 10, 12
18 U.S.C. § 3626(g)(2) ....................................................................................................... 9
18 U.S.C. § 3626(g)(3) ....................................................................................................... 9
18 U.S.C. § 3626(g)(5) ....................................................................................................... 9
18 U.S.C. § 3626(g)(7) ....................................................................................................... 9
18 U.S.C. § 3626(g)(9) ....................................................................................................... 9

**NEW YORK STATE AND NEW YORK CITY AUTHORITIES**

9 N.Y.C.R.R. § 7031.2(b) .................................................................................................. 8
40 R.C.N.Y. 1-09(g)(6) ..................................................................................................... 8
N.Y.C. D.O.C. Directive 6000R-A ................................................................................... 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

CORALYN GRUBBS, *et al.*,

                        Plaintiffs,         92 CV 2132 (GBD)

     -against-

LEE BROWN, in his official capacity as Police
Commissioner of the City of New York, *et al.*,

                        Defendants.
------------------------------------------------------------------ x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION SEEKING ENFORCEMENT OF THIS COURT'S ORDERS, MODIFIED INJUNCTIVE RELIEF, AND A FINDING OF CIVIL CONTEMPT**

## PRELIMINARY STATEMENT

On behalf of Defendant City of New York ("Defendant" or "City"), including its mayoral agency, the New York City Department of Correction ("DOC"), I apologize to the Court and to the Plaintiff class for Defendant's inadvertent and unintentional violation of the Court's preliminary injunction. Specifically, during the effective period of the preliminary injunction, one of the four cameras in the attorney-client interview booths at issue was recording and likely captured masked images of attorney-client interviews. Fortunately, no one was prejudiced. No sound was recorded; the image of the detainee was masked; only a limited group of DOC officials had user access (which appears to largely have not been exercised); and the recordings were long ago written over.

However, the City represented to the Court and to Plaintiffs' counsel that we were honoring the terms of the preliminary injunction, even after its expiration in January 2016. As Defendant learned in February 2017, this was not so. Moreover, the recording function (but not the viewing function) on the cameras was enabled on two other occasions: once as a result of routine maintenance on May 18, 2016. The error was discovered on June 20, 2016, and immediately corrected. The second time was in September 2016 as the result of a software upgrade. This error was not discovered until February 2017, at which point it was immediately corrected. Again, there has been no prejudice to plaintiffs since user access in these latter two instances was limited to the three DOC Information Technology ("IT") system administrators who maintain the system, and most of the recordings were overwritten long ago. (DOC has preserved those that existed on February 17, 2017, but has not viewed them.) At this juncture, DOC technicians have manually disconnected the four cameras in two different ways, and DOC's IT Division now weekly checks the status of the cameras and generates a weekly report to DOC's Commissioner and Legal Division confirming that the cameras at issue are not recording and that no one has access to them.

Given this, it is respectfully submitted that any contempt violation has been purged. Thus, no contempt citation should be issued and no further relief should be ordered.

## STATEMENT OF FACTS

There are four cameras at issue here. All are located in the pre-arraignment attorney-client interview booths (one in each of the four booths) at the State Courthouse located at 26 Central Avenue, Staten Island, N.Y. ("SI Courthouse" or "Courthouse").[1] These areas are solely under DOC control. Three are for male pretrial detainees (male booth cameras 1-6, 1-7 and 1-8);

---

[1] Construction of the Courthouse was completed in 2015, and it opened in September of that year.

and one is for females (female booth camera). The viewing function on the cameras was turned on prior to the opening of the Courthouse in late September 2015. *See* Declaration of Maureen Danko, dated April 12, 2017 ("Danko Decl."), ¶2.[2]

On October 20, 2015, following oral argument, this Court issued an order in which it temporarily enjoined the City, including DOC, "from continuous minute-by-minute recording or monitoring by camera of attorney-client private consultations at the Richmond County Criminal Court attorney-client interview rooms." *Grubbs v. Brown*, 92 CV 2132 (Docket #82; "Preliminary Injunction"). The cameras were turned off on the following day. *See* Danko Decl., ¶3. As explained by Deputy Commissioner Danko, the head of DOC's Information Technology ("IT") Division, the cameras were turned off centrally by disabling the recording function and limiting user accessibility to the three DOC IT system administrators (so that routine maintenance and upgrades could be performed). The retention period was set to 24 hours, the shortest period available, since the system requires that a retention period be set. *Id.*

Under 18 U.S.C. § 3626(a)(2) of the Prison Litigation Reform Act ("PLRA"), the Preliminary Injunction expired on January 18, 2016.

In light of the preliminary injunction, the undersigned wrote to the Court on October 28, 2015 (Docket #83), to advise of DOC's plans to turn the cameras back on intermittently and scheduled the starting date for the following week (i.e., November 2, 2015). Defendant proposed having the cameras on for one minute, and off for one minute. Defendant specifically advised of its proposed plan in advance of implementation to allow plaintiffs and the Court the opportunity to consider Defendant's plan. By letter dated October 30, 2017 (Docket #84), Plaintiffs opposed Defendant's plan. That same day, the Court issued an Order to Show Cause for Preliminary

---

[2] Maureen Danko is the Deputy Commissioner of DOC's Information Technology Division, a position she has held since 2011.

Injunction and Temporary Restraining Order (Docket #86; "TRO") in which it temporarily restrained the City and DOC from "recording or monitoring by camera any attorney-client private consultations at the Richmond County Criminal Court attorney-client interview rooms." Plaintiffs do not base their contempt motion on this order.

By joint letter Request for Adjournment of Show-Cause Hearing so-ordered on November 4, 2015 ("Adjournment Request"; Docket #87), the Court approved the parties' proposal "that in lieu of setting a hearing date at this time, the parties [will] report back to the Court as to the status of their [dispute resolution] discussions on or before November 24, 2015. In the interim, the Defendants will continue to refrain from any video monitoring or recording in the pre-arraignment attorney-client rooms in the Richmond County Courthouse, unless otherwise ordered by the Court."

Thereafter the parties attempted, unsuccessfully, to resolve the issues concerning the booths. As part of that effort, in November and December 2015, Defendant experimented with masking technology, which was applied to the male booth 1-6 camera, to craft a technology solution that would meet the needs of all parties. The masking technology blocks the portion of the image of the booth where the detainee sits to speak with his/her attorney. (The camera captures images only of the detainee's side of the booth; the attorney cannot be seen.) The masking technology prevents the camera from capturing any visual image of the detainee in the affected area, thereby creating a privacy zone.[3]

---

[3] This means that the seated detainee would be blocked out on the live feed and the video recording, and replaced by a white box. A privacy zone would also be demarcated on the floor and signs would be posted in the booths to remind the detainee. Should a detainee move outside of that privacy zone while speaking to his/her attorney, the attorney could remind her/him to sit on the seat in the marked area. Thus plaintiffs and their counsel would be able to completely control the image captured by the video and ensure the cameras would not record information pertinent to their conversations. The live feed would be used to monitor activity in the booth, and the recording would be used to spot and record medical emergencies, physical incidents involving detainees and/or others, detainee use of contraband, detainees sleeping in the booth, and any other security issue. Thus, under the plan, the

To perform the masking technology experiment, the recording function on the male booth 1-6 camera was enabled. Inadvertently, the recording function was not disabled after the experiment was completed. This was discovered on June 20, 2016, when it was immediately disabled. From November 20, 2015, to June 20, 2016, a limited number of individuals (the three DOC IT system administrators and eight other DOC staff members) accessed the male booth 1-6 camera. It appears that the only images extracted were in connection with the masking technology experiment performed for settlement purposes in this case. Danko Decl., ¶¶6, 7, 11.

On May 18, 2016, citywide systemic maintenance was performed on DOC's camera system. Although this resulted in the recording function being enabled on all cameras in DOC's camera system, including the other three cameras at issue, user inaccessibility continued on these cameras. Hence, no one except for the three DOC IT system administrators had access. Danko Decl., ¶¶9-11.

The enabling of the recording function was discovered on June 20, 2016, at which point all four cameras were reset so that the recording function was disabled; user inaccessibility was continued. *Id.*

In September 2016, a system-wide software upgrade was made, which caused the recording function to be re-enabled on all four cameras. However, they continued to be user inaccessible. *Id.,* ¶12

On February 17, 2017, as DOC's IT Division was gathering information responsive to Plaintiffs' discovery requests, they discovered that the recording function was enabled in the cameras at issue, although still user inaccessible. Recording was immediately disabled for all four cameras, and they continued to be user inaccessible. Danko Decl., ¶¶13-14. On March 1,

---

City would be able to maintain remote visual surveillance, albeit partially obstructed and with no audio, and have a partially-obstructed visual-only record of any incident or emergency that occurs inside the interview booth.

2017, the wiring was disconnected for these four cameras at the network switchboard in the control room at the SI Courthouse. *Id.,* ¶15; Declaration of Frank Sacco, dated April 11, 2017 ("Sacco Decl."), ¶¶3-4. On March 22, 2107, the disconnected switchboard wires were capped with red tape and a copy of the TRO was posted on the cabinet door to the network switchboard. Sacco Decl., ¶¶5-6. In addition, on that same day, the camera housing in each booth was opened and the cable in the back of each camera was disconnected, thereby disconnecting each booth camera a second time. These wires were also capped with red tape. *Id.,* ¶¶7-8.

Finally, as a result of the February discovery, DOC's IT Division modified its internal processes and procedures so that it can quickly identify and resolve problems should a similar incident occur in the future. Specifically, the protocol for disabling DOC cameras pursuant to a court order has been revised to include physically disconnecting both the camera and the network switch unless DOC's IT Division receives special instructions from the Commissioner or DOC's Legal Division to the contrary. Danko Decl., ¶16. In addition, DOC's IT Division has implemented a manual check to confirm the status of any camera that is disabled pursuant to a court order and issues a weekly report to DOC's Legal Division concerning the status of such cameras. *Id.*

## LEGAL ARGUMENT

### POINT ONE

**SINCE DEFENDANT HAS PURGED THE ORDER VIOLATION, THE COURT SHOULD NEITHER ISSUE A CONTEMPT CITATION NOR GRANT ADDITIONAL RELIEF**

"'A party may not be held in [civil] contempt unless (1) the order violated by the contemnor is clear and unambiguous, (2) the proof of non-compliance is clear and convincing,

and (3) the contemnor was not reasonably diligent in attempting to comply.'" *Panix Promotions, Ltd. v. Lewis,* 2004 U.S. Dist. LEXIS 3504 at *5 (S.D.N.Y. 2004), quoting *Equal Employment Opportunity Comm'n v. Local 638,* 81 F.3d 1162, 1171 (2d Cir. 1996); *Benjamin v. Fraser,* 2002 U.S. Dist. LEXIS 18342 at *33 (S.D.N.Y. 2002). The burden of proving the elements of contempt rests on the movant and is satisfied by the production of "clear and convincing" evidence that demonstrates to a "reasonable certainty" that a violation has occurred. *Panix Promotions,* 2004 U.S. Dist. 3504 at *6, citing *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir. 2002). Failure to meet the strict requirements of an order does not necessarily subject a party to a finding of contempt. *Benjamin v. Kerik,* 1999 U.S. Dist. LEXIS 3980 at *9 (S.D.N.Y. 1999). A finding of civil contempt may be overcome by showing, *inter alia,* the order was vague or indefinite as to whether a particular action was required or prohibited, or the proof of the violation was not clear and convincing. *Panix Promotions,* 2004 U.S. Dist. LEXIS 3504 at *6, citing *Sacco v. Burke,* 764 F.Supp., 918, 921 (S.D.N.Y. 1991). Finally, the purpose of civil contempt sanctions and when they may be imposed was explained as follows by Judge Pauley in *In re Various Grand Jury Subpoenas,* 12 Misc. 381, at 5 (S.D.N.Y. Feb. 13, 2017):

> The "chief characteristic of civil contempt is that its purpose is to compel obedience to an order of the court to enforce the rights of the other party to the action. Consistent with this remedial purpose, the sanction imposed is generally made contingent on compliance." *Armstrong v. Guccione,* 470 F.3d 89, 101 (2d Cir. 2006)(citing *In re Irving,* 600 F.2d 1027, 1031 (2d Cir. 1979)). Civil contempt sanctions "may not be imposed as a purely punitive measure." *Paramedica Electromedicina Comercial, Ltda v. GE Medical Sys. Info. Tech., Inc.,* 369 F.3d 645, 657 (2d Cir. 21004).

Plaintiffs ask the Court to hold the City in civil contempt. They point to three orders as the basis for their request: (1) the 1999 Stipulation and Order of Settlement; (2) the Preliminary Injunction dated October 20, 2015; and (3) the Adjournment Request dated November 4, 2015.

### A. *The 1999 Stipulation and Order of Settlement*

Plaintiffs identify paragraph 11 of the 1999 Stipulation and Order of Settlement ("Settlement") filed in this action as a basis for contempt. It provides:

> The City shall use its best efforts to construct or install by August 31, 1999, an interview booth for pre-arraignment detainees to consult privately with counsel in the courthouse at 67 Targee Street, Staten Island, New York.

*See* Stipulation and Order of Settlement, ¶11 (Docket #62). As is clear from the language of paragraph 11, it required best efforts to be made to construct an interview booth at the old criminal courthouse on Targee Street for pre-arraignment detainees to consult privately with counsel. It is silent in regard to cameras. It does not (and could not) pertain to the current SI Courthouse. Moreover, the City was required to use "best efforts" to construct a booth at the old courthouse. Thus, the Settlement is both vague and indefinite as to the actions the City was required to do. This is particularly true as applied to the new SI Courthouse.

In addition, even assuming that Plaintiffs could overcome all of the above, which they cannot, Plaintiffs ask the Court to infer that the clear and unambiguous meaning of "consult privately" excludes visual monitoring by camera. However, that is exactly the crux of the current dispute, which has not yet been adjudicated on the merits. It was the subject of the motion that Defendant withdrew when it realized its violation of the Preliminary Injunction. Moreover, there is no dispute that DOC is legally required to provide visual monitoring. *See* 9 N.Y.C.R.R. § 7031.2(b) ("Visits or telephone communications between prisoners and their legal counsel shall not be monitored except visually."); 40 R.C.N.Y. 1-09(g)(6) ("Visits shall not be listened to or monitored unless a lawful warrant is obtained, although visual supervision should

be maintained."); DOC Directive 6000R-A § II(E)[4] ("visits between inmates and their legal counsel shall not be monitored except visually . . . [and] shall be kept confidential and protected unless a lawful warrant is obtained").

For all these reasons, the Settlement is not a viable basis on which to find Defendant in contempt.

### B. *The Preliminary Injunction dated October 20, 2015 and the Adjournment Request dated November 4, 2015*

Defendant acknowledges that it was not in compliance with the Preliminary Injunction and the Adjournment Request for limited periods as explained below.

The Preliminary Injunction dated October 20, 2015, enjoined Defendant "from continuous minute-by-minute recording or monitoring by camera of attorney-client private consultations at the Richmond County Criminal Court attorney-client interview rooms." This order expired on January 18, 2016, since the Prison Litigation Reform Act[5] expressly provides

---

[4] *See* http://www1.nyc.gov/assets/doc/downloads/directives/6000R-A_Attorney_Legal_Official_Visits_11_15.pdf

[5] The Prison Litigation Reform Act was enacted with the goal "of relieving governmental entities of judicially ordered burdens that 'extend . . . further than necessary' to remedy a federal violation." *Benjamin v. Jacobson*, 172 F.3d 144, 158 (2d Cir.), *cert. denied sub nom, Benjamin v. Kerik*, 528 U.S. 824 (1999), *quoting* 18 U.S.C. § 3626(a)(1)(A). The statute expressly contains definitions that define the statute's scope. Of import here are the definitions for prisoner, prison, "civil action with respect to prison conditions," prospective relief, and relief.
    A "prisoner" is defined as "any person subject to incarceration, detention, or admission to any facility who is accused of . . . violations of criminal law[.]" 18 U.S.C. § 3626(g)(3).
    A "prison" is defined to include "any . . . local facility that . . . detains juveniles or adults accused of . . . violations of criminal law[.]" 18 U.S.C. § 3626(g)(5).
    "Civil action with respect to prison conditions" is defined to mean "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined to prison," [but excludes habeas proceedings challenging the fact or duration of confinement in prison]. 18 U.S.C. § 3626(g)(2).
    "Prospective relief" is defined to mean "all relief other than compensatory monetary damages[.]" 18 U.S.C. § 3626(g)(7).
    "Relief" is defined to mean "all relief in any form that may be granted or approved by the court, and includes consent decrees but does not include private settlement agreements." 18 U.S.C. § 3626(g)(9).
    Thus under the PLRA's definitions, plaintiffs are "prisoners" in "prison," since by class definition, they are persons subject to incarceration, detention and/or admission at the pre-arraignment pens at the Courthouse, for violations of criminal law. Although the Courthouse pens are under DOC's control, the same conclusion would be required regardless of the City agency exercising control over the pens.

that "preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under [18 U.S.C. § 3626(a)(1)] for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2). Neither prerequisite for entry of an order of final prospective relief occurred here. Hence, the Preliminary Injunction automatically expired on January 18, 2016 -- 90 days from October 20, 2015.

Defendant acknowledges that it applied masking technology to the male booth 1-6 camera on Thursday, November 20, 2015, at which point the recording function of this camera was enabled and inadvertently it was not turned off. Thus as to the male booth 1-6 camera, Defendant acknowledges that it was in violation of the Preliminary Injunction from November 20, 2015, to January 18, 2016.

In the Adjournment Request dated November 4, 2015, the Court approved the parties' proposal:

> that in lieu of setting a hearing date at this time, the parties [will] report back to the Court as to the status of their [dispute resolution] discussions on or before November 24, 2015. In the interim, the Defendants will continue to refrain from any video monitoring or recording in the pre-arraignment attorney-client rooms in the Richmond County Courthouse, unless otherwise ordered by the Court.

---

The PLRA limits the prospective relief that a federal court can order here, providing that such relief cannot be granted "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. §3626(a)(1)(A); see, e.g., Miller v. French, 530 U.S. 327, 347 (2000) ("The PLRA has restricted courts' authority to issue and enforce prospective relief concerning prison conditions, requiring that such relief be supported by findings and precisely tailored to what is needed to remedy the violation of a federal right."). The same standard applies to preliminary injunctive relief. 28 U.S.C. § 3626(a)(2). Moreover, courts must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." Id.

Finally, the PLRA expressly provides that "preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under [18 U.S.C. § 3626(a)(1)] for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2).

The plain English reading of the "interim" referenced in the second sentence is the period between the date of the letter, November 4, 2015, and the date on which the parties were to report back to the Court, November 24, 2015. Thus from November 20-24, 2015, Defendant was not compliant with so-ordered Adjournment Request as explained above.

The violation outlined above concerning the male booth 1-6 camera was unintentional and inadvertent. Moreover, no plaintiff was prejudiced by the violation, since no recordings were passed on to the prosecutor and all were overwritten months ago. The Sixth Amendment right to counsel, which is the basis for Plaintiffs' claim, is violated only when (a) the Government either deprives the detainee of any opportunity to consult with counsel, or (b) deliberately and improperly interferes with the attorney-client relationship, which results in substantial prejudice to the detainee in defending against the criminal charges. *Fellers v. United States,* 540 U.S. 519, 524 (2004); *Weatherford v. Bursey,* 429 U.S. 545, 553-55 (1977); *Gideon v. Wainwright,* 372 U.S. 335 (1963); *United States v. Solnin,* 2015 U.S. Dist. LEXIS 144130 at *17-25 (E.D.N.Y. Oct. 23, 2015); *People v. Johnson,* 27 N.Y.3d 199, 205-6 (2016). Neither situation occurred here.

## C. *Defendant has purged the order violation*

Finally, even if the Court disagrees with Defendant on the import of the PLRA in this case, Defendant has taken all steps needed to disable the four cameras at issue. We have physically disconnected the cabling for those cameras in two places: once at the network switchboard; and a second time inside the camera housing in each booth by disconnecting the cable running from the back of each camera to the switchboard. In addition, all of the camera cable ends have been taped over with red tape, and a copy of the TRO has been posted on the door of the network switchboard cabinet located in the control room at the SI Courthouse.

Defendant further states that notwithstanding the PLRA, its intent was and continues to be to honor the Preliminary Injunction and the TRO until either a final decision on the merits is issued or the parties resolve the matter. Although inadvertent and unintentional, all four cameras were recording at various points of time between November 2015-February 17, 2017. Three of the cameras were always user inaccessible (except for the three DOC IT system administrators). The fourth camera, the male booth 1-6 Camera, has masking technology applied to it, and only a limited group of DOC staff had access to the camera footage for a limited period of time.

Finally, DOC has revised its procedures for implementing court orders to disable cameras by requiring the disabling to include physically disconnecting the cabling in addition to technological disconnection. In addition, DOC's IT Division has implemented a manual monitoring protocol for these cameras and issues weekly reports on them to prevent future lapses.

Thus, not only has Defendant purged the contempt violation, but also it has affirmatively taken all steps necessary to ensure that the cameras are not inadvertently turned on in the future, both by physically disconnecting the cabling and establishing a weekly monitoring protocol. For these reasons, it is respectfully submitted that no contempt citation should issue and no further relief should be ordered in this case.[6]

---

[6] Finally, should the Court disagree, Defendant notes that any additional relief granted by the Court must meet the requirements of the PLRA, which limits the prospective relief that a federal court can order here. Specifically, such relief cannot be granted "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. §§ 3626(a)(1)(A), (a)(2); *Miller v. French*, 530 U.S. 327, 347 (2000) ("The PLRA has restricted courts' authority to issue and enforce prospective relief concerning prison conditions, requiring that such relief be supported by findings and precisely tailored to what is needed to remedy the violation of a federal right."). Moreover, courts must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

## CONCLUSION

For the reasons set forth in this memorandum of law and the accompanying affidavits, Defendant respectfully submits that it has purged the contempt violation. Hence no contempt citation should issue and no further prospective relief should be granted in this case.

Dated: New York, NY
       April 12, 2017

                      ZACHARY W. CARTER
                      Corporation Counsel for the City of New York
                      Attorney for the Defendant City of New York
                      100 Church Street, 2-195
                      New York, NY 10007
                      (212) 356-2085
                      Fax: (212) 356-2439

                      By: _____
                          Janice Birnbaum, Senior Counsel
                          jbirnbau@law.nyc.gov