**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CORALYN GRUBBS, LOUIS SMITH, ALI RIVERA, and SEAN MILLER, individually and on behalf of all other persons similarly situated, | : : : : | |
| Plaintiffs, | : | Case No. 92-cv-2132 |
| v. | : : | (GBD) |
| HOWARD SAFIR, in his official capacity as Police Commissioner of the City of New York; NEW YORK CITY POLICE DEPARTMENT; BERNARD KERIK, in his official capacity as Commissioner of Correction of the City of New York; NEW YORK CITY DEPARTMENT OF CORRECTION; RUDOLPH GIULIANI, in his official capacity as Mayor of the City of New York; and THE CITY OF NEW YORK, | : : : : : : : : : : | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION BY ORDER TO SHOW CAUSE FOR STAY PENDING APPEAL** |
| Defendants. | : : | |

Plaintiffs move pursuant to Fed. R. App. P. 8(a) for a short temporary stay pending appeal of the Court's Memorandum Decision and Order entered on February 26, 2018 ("Order") (Dkt No. 146) granting the Defendant the City of New York's (the "City") Motion for an Order Granting the City Declaratory Relief and Dissolving Any Preliminary Injunction or Temporary Restraint Currently in Effect ("City's Motion") (Dkt Nos. 130 and 131).

### PRELIMINARY STATEMENT

This case arises out of a Settlement Order approved and adopted by the Court more than 17 years ago stating that "[t]he City shall use its best efforts to construct or install, by August 31, 1999, an interview booth for pre-arraignment detainees to consult **privately** with counsel in the courthouse at 67 Targee Street, Staten Island, New York."[1] (Settlement Order) (emphasis added) Now, the City of New York and Department of Correction have installed cameras in the booths where attorneys consult with clients pre-arraignments. On October 30, 2015, the Court granted an order temporarily restraining the City from recording or monitoring by camera any attorney-client private consultations at the Richmond Country Criminal Court attorney-client interview rooms. (Order to Show Cause for Preliminary Injunction and Temporary Restraining Order (Dkt 86)) On July 20, 2017, the City filed the City's Motion. The Court held a hearing on the City's Motion on July 24, 2017, and on February 26, 2018, issued an Order finding the City's proposed plan for the use of video cameras with masking technology legally sufficient and granting the City's motion for declaratory relief. (Dkt 146) Plaintiffs intend to file an expedited appeal of this Order and request a short stay of the Court's Order pending appeal.

---

[1] The Court is familiar with the facts of the case and Plaintiffs will not repeat them in here. Plaintiffs incorporate here by reference the facts set forth in Plaintiffs' Memorandum of Law In Support of Plaintiffs' Order to Show Cause Seeking Enforcement of the Settlement Order and for a Temporary Restraining Order and Preliminary Injunction ("Plaintiffs' 2015 Motion") (Dkt No. 76) and Plaintiffs' Memorandum of Law in Opposition to Defendant City of New York's Motion for an Order Granting the City Declaratory Relief and Dissolving Any Preliminary Injunction or Temporary Restraint Currently in Effect ("Plaintiffs' Opposition to Defendant City's Motion") (Dkt No. 138).

As shown below, Plaintiffs meet the standard for a stay pending appeal. Further, the City has gone years without operating surveillance cameras in the attorney-client interview booths with no security incidents and, even after the Court preliminarily enjoined the use of the cameras, the City delayed well over a year in seeking to lift the injunction. The City will not suffer any harm if it must wait a few more months while the Second Circuit resolves this important constitutional issue.

**ARGUMENT**

I. **The Court Should Grant Plaintiffs' Motion for a Stay of the Order Pending Appeal**

In considering whether a stay of an order pending appeal is appropriate, the district court evaluates the following factors: (1) whether the stay applicant made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., 2004 U.S. Dist. LEXIS 24079, at *6 (S.D.N.Y. 2004) (citing Rodriquez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998)). Plainly, a party seeking a stay pending appeal from the Court that just ruled against it need not show that it is likely to prevail on the merits. Instead, this prong may be satisfied where the moving party shows that the case is complex and involves substantial legal issues. United States v. Visa U.S.A., Inc., 98-cv-7076, 2002 U.S. Dist. LEXIS 25086 (S.D.N.Y. Feb. 7, 2002) (granting stay pending appeal where, "[w]hile fully confident in its Decision, the court acknowledges that this is a case involving substantial legal issues and a complex industry."). The Second Circuit has determined that a court may properly "grant a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant." Id. (internal quotations omitted) (citing Mohammed v. Reno,

2

309 F.3d 95, 101 (2d Cir. 1999). Moreover, "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." Id. (internal quotations omitted) (citing Mohammed, 309 F.3d at 101) (quoting Michigan Coalition of Radioactive Users Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991)).

Here, Plaintiffs have a reasonable possibility of success on appeal in showing that the cameras violate the 1999 Settlement Order and/or the Sixth Amendment. (Plaintiffs' 2015 Motion 7) The inability of a criminal defendant to "openly and freely" communicate with their attorneys also violates the Sixth Amendment right to counsel, which requires "[f]ree two-way communication between the client and the attorney." United States v. Levy, 577 F.2d 200, 209 (3d Cir. 1978); see also Grubbs v. Safir, 1999 WL 20855, at *7 (S.D.N.Y. Jan. 15, 1999). In the opinion that led to the 1999 Settlement Order, Judge Chin found that "[t]he assistance of counsel would be rendered meaningless if that counsel's client were to be inhibited from speaking openly and freely." Grubbs, 1999 WL 20855, at *7. To remedy the constitutional violation that the Court found, the City agreed, in the 1999 Settlement Order, to provide a space for pre-trial detainees to "consult privately" with their attorneys. As set forth below, the presence of the cameras—particularly when turned on, as they will be if the Court does not grant a stay—will inhibit free and open attorney-client consultations and will destroy the "privacy" that was required under the 1999 Settlement Order.

*First*, the presence of the operating cameras will continue to inhibit attorney-client communications—even more so now that detainees will be informed that the cameras are turned on and recording. Recently-arrested detainees who go to meet with their lawyers for the first time will have a video surveillance camera pointed directly at their face. The City has indicated —without providing details— that they intend to post some signage to disclose to detainees that

some "masking technology" is enabled and that the audio function is disabled. Nevertheless, a detainee would reasonably be suspicious of the City's representations, and such suspicion alone will necessarily inhibit their free and open conversations with their attorneys.

Moreover, any distrust of the City's representations is eminently reasonable given (1) the City's repeated violations of the Court's orders (Plaintiffs' Motion Seeking Enforcement of This Court's Orders, Modified Injunctive Relief, and a Finding of Civil Contempt (Dkt Nos. 100-103)) and (2) the fact that ***at least eight individuals at the Department of Correction ("DOC") logged on to and viewed recorded video from one of the cameras*** at a time when the cameras were ordered to be turned off. (Plaintiffs' Opposition to Defendant City's Motion 12) The City has still failed to provide the Court with any explanation, let alone a legitimate justification, for why DOC personnel were viewing this footage. Particularly given this history, Plaintiffs' attorneys will be in no position to reassure their clients that the cameras' masking technology and audio function have been properly calibrated in accordance with this Court's Order. At best, such attorneys will be able to repeat what the City has represented, while disclaiming any knowledge of whether those representations are true. Under these circumstances, it is difficult to imagine how Plaintiffs and their attorneys could have genuinely free and open conversations.

At a minimum, this case presents novel questions of law concerning a criminal defendant's Constitutional right to counsel. The City has provided no authority supporting its use of surveillance cameras in attorney-client interview rooms—with or without the use of "masking technology." Under these circumstances, Plaintiffs easily satisfy the "possibility of success" prong, particularly in light of the irreparable constitutional injury that Plaintiffs will suffer absent a stay, as shown below.

*Second*, assuming *arguendo* that Plaintiffs do succeed on appeal, Plaintiffs will have suffered irreparable injury absent a stay. The City's use of cameras in the attorney-client interview booths will violate Plaintiffs' Sixth Amendment right to counsel, as well as the Settlement Order designed to remedy that violation, causing immediate harm that will not be remedied by an award of monetary damages. It is well settled in the Second Circuit that a violation of a constitutional right causes irreparable harm per se, and most courts do not require a further showing of irreparable injury. Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (quoting 11C. Right & Miller, Federal Practice and Procedure, § 2948, at 440 (1973)); Santa Fe Natural Tobacco Co., Inc. v. Spitzer, No. 00 CIV 7274 LAP, 2000 WL 1694307, at *1 (S.D.N.Y. 2000) ("in general, deprivation of a constitutional right constitutes irreparable injury.").

Moreover, Plaintiffs who are unable to openly communicate with their attorneys at the critical first stage of a criminal case are inadequately prepared for arraignments, which has far reaching consequences and irreparably harms Plaintiffs. See Johnson v. Sullivan, No. 1:06-cv-01089, 2008 WL 5396614, at *6-7 (E.D. Cal. Dec. 23, 2008) (injunctive relief was warranted where Plaintiff was not allowed to confer with counsel and argued he was irreparably harmed as he was unable to prepare his case for trial and was effectively denied access to the courts). Arraignments are the most crucial stage of a criminal case, where bail may be set, urgent early investigation opportunities can be initiated, and grand jury rights for those with felonies are discussed. (Plaintiffs' 2015 Motion, (Ex. A, Affidavit of Christopher Pisciotta)) Any inhibition of a clients' ability to freely and openly communicate with their attorneys has the potential to severely harm a criminal defendant's case. Id. at 6. Such injury would clearly be irreparable.

*Third*, the City will suffer no injury if a stay is issued. Other than the City's violations of the Court's orders, the cameras have been turned off since October 20, 2015 and, as the Court recognized, there have been no security incidents. (Order at 12) The Court further recognizes that there are alternative means of addressing the City's security concerns, including the use of locks. Id. at 16 n 7. Nor can the City plausibly claim that there is some urgent need to turn on these cameras. Video surveillance cameras have been in widespread use for almost 50 years. See Robert R. Belair and Charles D. Block, *Police Use of Remote Camera Systems for Surveillance of Public Streets*, 4 Colum. Hum. Rts. L. Rev. 143, 147-53 (1972) (describing "[t]he [i]ncreasing [u]se of [c]amera [s]urveillance [s]ystems" since the early 1970s). Yet, prior to the installation of these surveillance cameras in Staten Island in 2014, there is no evidence that the City has *ever* operated video surveillance cameras in any other pre-arraignment attorney-client interview rooms anywhere in the City. After waiting for nearly 50 years the City cannot credibly claim that it will be prejudiced if it must wait a few more months for the Second Circuit to resolve this important constitutional question. Moreover, after the Court's injunction in October 2015, and after settlement discussions ended in February 2016, the City waited more than a year to seek to reactivate the cameras. (See City's Motion) Again, by its conduct, the City has acknowledged that the activation of these cameras is not an urgent security matter.

*Finally*, a stay is in the public interest, which is clearly in protecting the constitutional rights of all its members. Ligon v. City of New York, 925 F.Supp. 2d 478, 541 (S.D.N.Y. 2013).

For the foregoing reasons, Plaintiffs respectfully request that the Court stay its Order pending appeal.

**II.     Alternatively, Plaintiffs Request (1) Interim Disclosures Concerning the City's Use of The Cameras, and (2) an Order that the City Provide a Monitor for Attorneys to View the Live Video Footage**

Should the Court deny Plaintiffs' request for a stay pending appeal, in order to minimize the constitutional harm that will have been suffered if Plaintiffs prevail on appeal, Plaintiffs request the Court order the City to make interim disclosures concerning the City's use of the cameras. These disclosures are necessary for counsel for Plaintiffs to adequately advise their clients of the presence of cameras in the attorney-client interview booths and answer questions about how the masking technology works. Plaintiffs specifically request:

- A timeline for when the City plans to utilize masking technology, including when the City plans to turn on cameras and place disclosures in the booths to give Plaintiffs notice of the cameras;

- Sample video footage showing the "masked" area in each room and a certification that the same dimensions for the "masking" will be used and that the masking dimensions will not change absent further Order of the Court;

- Disclosures regularly confirming to Plaintiffs that the audio recording capabilities have been reviewed and remain turned off and that the masking technology remains properly in place;

- A certification that if the City (or the DOC) discovers again (for the fifth time) that it has failed to comply with the Order (whether because masking technology is disabled, audio is enabled, or otherwise), the City will immediately disclose such non-compliance to the Court; and

- Specific language the City intends to use to notify pre-arraignment detainees of the presence of cameras.

Plaintiffs further request the Court order the City to place a monitor in the attorney-side of the interview booths such that the attorneys can monitor the live camera footage while

meeting with pre-arraignment detainees. This is necessary for the attorney to adequately inform the client if and when they appear outside of the masked area in the least intrusive way possible.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request the Court issue a stay pending appeal of the Court's February 26, 2018 Order, or, in the alternative, order that the City make interim disclosures concerning the use of the cameras in attorney-client interview booths and order the City provide a video monitor in the attorney side of the interview booths.

Dated: March 8, 2018
New York, New York

Respectfully submitted,

/s/ *Colin T. West*

Colin T. West
Priya Srinivasan
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

Cynthia Conti-Cook
William Gibney
THE LEGAL AID SOCIETY
Criminal Defense Practice
Special Litigation Unit
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3419

*Attorneys for Plaintiffs*