# ATTACHMENT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CORALYN GRUBBS, LEWIS SMITH, ALI
RIVERA, and SEAN MILLER, individually and on
behalf of all other persons similarly situated,

                      Plaintiffs,

      - against -

HOWARD SAFIR, in his official capacity as Police
Commissioner of the City of New York; NEW
YORK CITY POLICE DEPARTMENT;
BERNARD KERIK, in his official capacity as
Commissioner of Correction of the City of New
York; NEW YORK CITY DEPARTMENT OF
CORRECTION; RUDOLPH GIULIANI, in his
official capacity as Mayor of the City of New
York; and THE CITY OF NEW YORK,

                      Defendants.

------------------------------------------------------------x

STIPULATION OF
SETTLEMENT

92 Civ. 2132 (DC)

Plaintiffs commenced this action on March 25, 1992, seeking declaratory and equitable relief to change the conditions of confinement to which they were subjected from the time of their arrest until their arraignment, and in some instances, when produced from jail to court for post-arraignment court proceedings in their criminal cases. The complaint alleged that those Plaintiffs who were pre-arraignment detainees were held for as long as three days under unhealthy and unsafe conditions; denied consistent access to necessary food, drink and related services; forced to sit and sleep in dirty cells with inadequate ventilation; held by Defendants under conditions that spread communicable diseases; denied adequate medical care and screening; denied an opportunity to wash; and denied an opportunity to call family, a friend or a lawyer.

The complaint further alleged that those pre-arraignment detainees who were arrested in Queens and Richmond Counties were denied an opportunity to privately consult with counsel and that female pre-arraignment detainees were held in particularly harsh conditions. It also alleged that those Plaintiffs who were committed to jail following arraignment and subsequently produced from jail for court appearances were held in unsafe and dirty cells with inadequate ventilation.

All Defendants answered the complaint and denied the material allegations set forth therein. An Answer was filed on May 28, 1992, by Defendants Matthew T. Crosson, sued in his official capacity as Chief Administrator of the Courts, Milton L. Williams, sued in his official capacity as Deputy Chief Administrative Judge of the New York City Courts, and The Office of Court Administration of the New York State Courts ("the former Court Defendants"). An Answer was filed on June 3, 1992, by Defendants Lee Brown, sued in his official capacity as Police Commissioner of the City of New York, The New York City Police Department ("NYPD"), Gerald Mitchell, sued in his official capacity as Acting Commissioner of Correction, the New York City Department of Correction ("DOC"), David Dinkins, sued in his official capacity as Mayor of the City of New York and the City of New York (the "City Defendants").

On October 15, 1992, the Court (Leisure, J.) entered a protective order to protect the confidentiality of all plans pertaining to holding and/or detention areas in any NYPD, DOC or NYC courthouse facility, including but not limited to floor plans, mechanical drawings, ventilation plans, structural plans, plumbing and electrical plans which have been sought by and disclosed to Plaintiffs in discovery. The parties then agreed before Judge Leisure to postpone motion practice to permit the discussion and investigation of the conditions at issue. Such meetings and investigation were held, and on September 19, 1995, a Stipulation and Order was

entered for settlement as to the Court Defendants. A mutually agreeable resolution of Plaintiffs' claims with regard to the City Defendants could not be reached.

On November 8, 1995, Plaintiffs filed a motion for class certification, pursuant to Federal Rule of Civil Procedure 23(a)(b)(1) and (2). On January 23, 1996, the Court (Chin, J.) certified a class of all persons who are held by the City Defendants in police precincts, central booking facilities and criminal court buildings in New York City while awaiting their arraignment, or who were held by the City Defendants following arraignment in criminal court buildings while appearing for other proceedings in connection with their criminal prosecutions.

The parties then conducted discovery. On September 25, 1997, the Plaintiffs moved for partial summary judgment, and on November 19, 1997, the City Defendants filed their opposition to that motion. On January 15, 1999, the Court denied Plaintiffs' motion for partial summary judgment, ruling that there were issues of fact to be resolved at trial. The Court set a trial date of June 21, 1999. The parties then renewed their efforts to settle the case.

The parties agree that since 1992, the City Defendants have reduced the arrest to arraignment time of Plaintiffs to an average of less than twenty-four (24) hours.

The parties agree that since 1992, the City Defendants have made or begun significant capital improvements in three of the central booking facilities in which those Plaintiffs who are pre-arraignment detainees are held. Between 1992 and 1993, the first floor pre-arraignment detention area for females in the Manhattan courthouse was expanded and remodeled. In 1996, the City Defendants opened a new central booking facility for Queens County ("Queens pre-arraignment court section"), and also a new central booking detention area for men in New York County ("Manhattan pre-arraignment court section"). In 1999, the City Defendants began

a renovation of the central booking facilities for women in Richmond County, which is scheduled for completion in September 1999.

The parties further agree that the City Defendants have made significant improvements to the ventilation systems in several of the central booking facilities in which those Plaintiffs who are pre-arraignment detainees are detained. In the Brooklyn pre-arraignment court section, between 1996-1999, a central air purifying unit ("crab unit") and a new central air conditioning unit with a fresh air hook-up was installed in the intake area; and two stand alone air purifying units ("NQ500") were installed - one in intake and one in the staging area. In the Manhattan pre-arraignment court section, between 1992 and 1993, the female area windows were modified, smoke ejecters and fans were installed, and the wall separating the female area was replaced with perforated sheet metal to allow for greater air circulation. In July 1996, a new independent air exchange system in the men's area was installed. In the Bronx pre-arraignment court section, in 1996, NQ500 units were installed on the second and third floors, and in 1998, a crab unit was installed on first floor. In 1997, at the 120th Precinct in Staten Island, an NQ500 unit was installed in the arrest processing area and an NQPILLAR/HEPA/UV carbon air treatment unit was installed in the male overnight lodging area. When the current renovations at the 120th Precinct are completed, NQ500 units will be installed in both the women's and men's overnight areas. In addition, HEPA filters have been installed in areas where Emergency Medical Services ("EMS") performs the medical screenings. The parties further agree that the City Defendants have instituted a plan for regular cleaning and maintenance of the ventilation systems in the central booking facilities and courthouse detention areas where Plaintiffs are held.

The parties further agree that the City Defendants have instituted a cleaning and maintenance schedule in the pre-arraignment court sections to insure that they are thoroughly

cleaned each day and given a comprehensive cleaning every three months; that the City Defendants have retained the services of qualified professional exterminators to control vermin and insects within the pre-arraignment court sections; and that the City Defendants have implemented procedures for the repair of plumbing and general maintenance for the central booking facilities.

The parties further agree that the City Defendants have made significant improvements to the fire safety systems in the central booking facilities and courthouse detention areas. They have established fire safety procedures, have repaired or where necessary replaced fire safety equipment, have designated and trained fire safety officers, established fire evacuation plans, and have implemented a plan for inspection and maintenance of fire safety equipment.

The parties further agree that the City Defendants have arranged for food service for all of the central booking facilities, including, in the pre-arraignment court sections, sandwiches using Halal products for Muslim pre-arraignment detainees and non-meat sandwiches for pre-arraignment detainees who do not eat meat, have installed refrigerators in all pre-arraignment court sections to store food and drink items for Plaintiffs who are processed for arrest between the established feeding times, have provided all pre-arraignment detainees with access to potable drinking water and sanitary supplies, and have installed telephones in all central booking facilities.

The parties further agree that the City Defendants have made significant efforts to provide medical screening to those Plaintiffs who are pre-arraignment detainees. They have opened Medical Screening Units in the pre-arraignment court sections in New York, Kings, Bronx, and Queens Counties, and have retained the services of emergency medical technicians ("EMTs") from the New York City Fire Department to operate these units. They have also

adopted plans to secure medical screening for those pre-arraignment detainees who are not held in the pre-arraignment court sections because of their designation as "Special Category" prisoners.

The parties agree that the Court has jurisdiction over this action and the parties, and that the Court has the authority to order the relief set forth in this Stipulation. The parties stipulate, based on the entire record, that the remedies set forth in this Stipulation are narrowly drawn, extend no further than necessary to correct violations of federal rights of the Plaintiff class, and are the least intrusive means necessary to accomplish redress.

IT IS HEREBY STIPULATED AND AGREED by the parties that Plaintiffs' claims shall be resolved without further litigation by the entry of a Final Judgment incorporating the terms of this Stipulation, following its approval by the Court after notice of its terms is provided to the class. The parties stipulate as follows:

1. Plaintiffs claims in paragraphs "44" through "47" of their complaint, regarding police vans, are withdrawn without prejudice.

**DEFINITIONS:**

2. The parties agree that the following words and phrases as used below in this Stipulation shall have the following meaning:

   (a) "Pre-arraignment detainee" shall mean an individual who has been taken into police custody and brought to a pre-arraignment detention facility, whether it be a precinct, or a pre-arraignment court section.

   (b) "Contact information" shall mean name, address and telephone number.

   (c) "Defendants", as used below, shall mean only the City Defendants.

(d) "Precinct/unit level training" shall mean training at the precinct level by precinct training personnel using materials produced by the NYPD Police Academy.

(e) "Pre-arraignment court section" shall mean a borough court section in Manhattan, Bronx, Brooklyn and Queens designed to lodge and process pre-arraignment detainees prior to arraignment.

# MEDICAL CARE OF PRE-ARRAIGNMENT DETAINEES:

3. Any pre-arraignment detainee who asks to be seen by a physician shall be transported to a hospital as soon as practicable, in accordance with the severity of the pre-arraignment detainee's medical condition.

4. If, at the time of arrest, a pre-arraignment detainee is taken into custody and has with him or her a pharmacy labeled container that lists the names of the prescription medication and pharmacy, the container with its contents shall be vouchered in accordance with NYPD procedures and a Medical Treatment of Prisoner form shall be completed. The following notations shall be made on the Medical Treatment of Prisoner form:

(a) a check indicating "yes" shall be made in the part of the form asking whether prescription medication was possessed at arrest;

(b) the property voucher number for the contents of the container shall be recorded in the appropriate box; and

(c) in addition, the following information shall be recorded: the contact information for the pharmacy, the prescription number, and when a physician's name appears on the container, the contact information for the physician.

Should a hospital physician treating a pre-arraignment detainee indicate that he needs information about the vouchered contents of the pharmacy container, the physician shall be given the voucher number and be advised on how to contact the desk officer in the NYPD facility where the

-7-

vouchered pharmacy container is being held. Desk officers receiving such telephone requests from hospital physicians or the health care personnel assisting the physicians shall be authorized to provide the name of the medication. Should the hospital physician, after learning the name of the medication, advise the desk officer that the medication is not available at the hospital and request that the medication be delivered to the hospital, the desk officer shall arrange for the vouchered pharmacy container to be delivered.

5. If a physician at a hospital provides a pre-arraignment detainee with medication to be taken by the pre-arraignment detainee during the pre-arraignment period, the police officer accompanying the pre-arraignment detainee shall take custody of the medication until the officer reaches the pre-arraignment court section, at which time the medication shall be given to the EMT to hold until the pre-arraignment detainee needs to self-administer the medication. Notwithstanding the above, no EMT shall be allowed to perform any service that is not permitted by the EMTs' scope of practice, as defined by the New York State Department of Health. For example, EMTs shall not hold injectibles, or controlled substances. If a pre-arraignment detainee needs further medication during the period of pre-arraignment detention in any form that is not authorized by the EMTs' scope of practice, he or she will be taken to a hospital for that medication.

6. If an individual identifying him or herself as a relative or a member of the pre-arraignment detainee's household appears at the precinct where the pre-arraignment detainee is located and indicates that the pre-arraignment detainee has a medical condition or needs medication, a "Medical Treatment of Prisoner Form" shall be completed. The "Medical Treatment of Prisoner Form" shall indicate that a self-identified relative or household member presented at the precinct with medical or medication information and shall indicate the contact

information for that relative or household member. Should a self-identifying relative or household member bring to the precinct a pharmacy labeled container that lists the names of the prescription medication and the pharmacy, and lists the name of the pre-arraignment detainee, the contact information for the pharmacy, the prescription number, and where the physician's name appears on the container, the contact information for the physician shall also be recorded on the "Medical Treatment of Prisoner Form." Notwithstanding the above, no police officer will be required to accept medication or pharmacy labeled containers and their contents from relatives or household members for the purpose of providing medication to the pre-arraignment detainee or vouchering the medication.

7. Within 90 days of approval of this Stipulation by the Court, the NYPD will issue an interim order that incorporates the principles in paragraphs "3" through "6." Within 90 days of issuing the order, NYPD shall commence precinct/unit level training or its equivalent to superiors and officers affected by this new order.

## PHYSICAL PLANT ISSUES:

8. The City shall use its best efforts to expand capacity for holding pre-arraignment detainees at the Pre-Arraignment Court Section at 120 Schermerhorn Street, Brooklyn, New York, ("Schermerhorn St. facility"), by making the following renovations by the dates indicated:

    (a) By November 1, 1999, the larger women's holding cell in the staging area shall be expanded to increase cell space and a stainless steel toilet/sink/fountain fixture ("new toilet fixture") shall be added to this cell;

    (b) By November 1, 1999, the smaller women's holding cell in the staging area shall be renovated by replacing the current toilet with a new toilet fixture;

(c) By November 1, 2000, the largest male cell in the staging area shall be renovated by adding a new toilet fixture;

(d) By November 1, 2000, a large new holding cell with a new toilet fixture shall be constructed in the staging area; and

(e) By November 1, 2000, the rear two cells in the Arraignment Part 2 ("AR2") feeder cell area shall be renovated to include, among other things, new toilet fixtures.

9. The City shall promulgate procedures to facilitate the timely repair of cells in the Schermerhorn St. facility. In addition, NYPD shall promulgate guidelines regarding distribution of pre-arraignment detainees who are held overnight at the Schermerhorn St. facility so that such pre-arraignment detainees shall be distributed reasonably among the available cells.

10. The City shall use its best efforts to implement the following ventilation modifications by the dates listed below:

(a) By September 1, 1999, a new ventilation unit for the staging area in Schermerhorn St. facility shall be installed;

(b) By September 1, 1999, the ventilation in the area known as the "Men's Specials" detention area in the pre-arraignment court section at 100 Centre St. in Manhattan shall be renovated; and

(c) By September 1, 1999, the ventilation in the area known as the "Women's area" in the pre-arraignment court section at 100 Centre St. in Manhattan shall be renovated.

11. The City shall use its best efforts to construct or install, by August 31, 1999, an interview booth for pre-arraignment detainees to consult privately with counsel in the courthouse at 67 Targee Street, Staten Island, New York.

## MONITORING:

12. The monitoring period shall be limited to two years following the approval of this Stipulation.

13. Defendants shall provide Plaintiffs' counsel with a contact person in the Mayor's Office of the Criminal Justice Coordinator who shall accept and respond to inquiries from Plaintiffs' counsel regarding compliance during the monitoring period.

14. Defendants shall provide prompt notice to Plaintiffs' counsel of any delay in the implementation of their obligations under paragraphs "7", "8" and "10" above.

15. To the extent that Defendants modify any of the forms or documents described herein, Defendants shall provide Plaintiffs' counsel with equivalent information to enable Plaintiffs' counsel to monitor.

### A. MEDICAL MONITORING:

16. Documents with confidential medical information shall only be produced in accordance with a confidentiality order issued by this Court.

17. Plaintiffs' counsel shall be provided with the amended version of NYPD's "Medical Treatment of Prisoner" form, and copies of NYPD interim orders or directives and the precinct/unit level training materials reflecting the principles set forth in paragraphs "3" through "6" above, and the schedule for new training on those principles.

18. The Defendants shall provide Plaintiffs' counsel with any "Report of Inmate Death to State Commission of Correction" and supporting documents submitted by either the DOC or the NYPD, concerning the death of a pre-arraignment detainee which occurred during the monitoring period.

19. Plaintiffs' counsel will periodically review the handling of pre-arraignment detainees with medication and medical care issues by reviewing the EMT medication logs for a designated week, and all NYPD "Medical Treatment of Prisoner" forms completed by NYPD officers during the designated week, along with the corresponding EMT medical screening forms and computer generated NYPD "On-line Booking Arrest Processing Worksheets." These documents shall be provided to Plaintiffs' counsel on a quarterly basis during the last three quarters of the first year following the effective date of this Stipulation and at six month intervals during the second year following the effective date of this Stipulation. The parties agree to establish a schedule for these reviews at least two weeks before the week designated for the collection of documents.

20. Upon a specific request by Plaintiffs' counsel, the types of documents listed in paragraph "19" shall be provided to Plaintiffs' counsel for any individual pre-arraignment detainee who is the subject of an inquiry made to the Mayor's Office of the Criminal Justice Coordinator under paragraph "13" above.

B. <u>PHYSICAL PLANT MONITORING:</u>

21. Subject to the terms of the protective order entered in this action on October 14, 1992, Defendants shall provide Plaintiffs' counsel with a schedule, description and diagrams for the physical plant renovations referred to in paragraphs "8" and "10" above.

22. The Defendants agree to:

(a) notify Plaintiffs' counsel of the completion of the cell renovations referred to in paragraph "8" above and the modifications to the ventilation systems described in paragraph "10" above;

(b) provide Plaintiffs' counsel with the results of a test of the modifications to the ventilation systems referred to in paragraph "10" above;

(c) provide Plaintiffs' counsel and their expert with access to these areas after the scheduled work is completed, for the purpose of assessing compliance with the Stipulation;

(d) permit inspection of the pre-arraignment court sections by Plaintiffs' counsel twice each year during the monitoring period;

(e) following the completion of the physical plant renovations at the Schermerhorn St. facility referred to in ¶ 8, and upon request of Plaintiffs' counsel to Defendants' counsel and the Mayor's Office of the Criminal Justice Coordinator, permit overnight inspection on three separate occasions;

(f) upon request of Plaintiffs' counsel to Defendants' counsel and the Mayor's Office of the Criminal Justice Coordinator, provide documents regarding physical plant renovations relevant to a question of failure to comply with ¶¶ 8, 10 and 11. Disputes regarding the propriety of such document requests may be referred to the Court for resolution and shall be handled in the same manner as a disagreement over pretrial discovery.

## CONCILIATION OF DISPUTES UNDER THIS STIPULATION:

23. In the event that a dispute arises as to whether Defendants are in compliance with the terms of this Stipulation, counsel for the parties shall make a good faith effort to resolve the dispute. Prior to institution of any proceeding before the Court to enforce the terms of this Stipulation, Plaintiffs' counsel shall notify Defendants' counsel and the contact in the Mayor's Office of the Criminal Justice Coordinator in writing of any claim by Plaintiffs that Defendants are not in compliance with identified provisions of this Stipulation and Plaintiffs' counsel shall request in that writing that these conciliation procedures be used. Unless otherwise resolved, the parties' counsel (and such representatives of the City as shall be appropriate) shall meet within ten business days of the receipt of said notice, in an attempt to arrive at an amicable resolution of the claim. If after fifteen business days following the meeting the matter has not been resolved to the Plaintiffs' satisfaction, Defendants shall be so informed in writing by

Plaintiffs' counsel, and Plaintiffs may then apply to the Court for enforcement of the provisions of the Stipulation identified in the above-described notice.

## CONTINUING JURISDICTION:

24. The Court shall retain jurisdiction over this action for the purpose of enforcing the provisions of this Stipulation. In the event of any motion for systemic relief based upon Defendants' alleged non-compliance with the substantive requirements of this Stipulation, Defendants shall be considered to be in "compliance" therewith unless Plaintiffs establish that Defendants' failures or omissions to meet the terms of this Stipulation were not minimal or isolated, but were substantial and sufficiently frequent or widespread as to be systemic.

## TERMINATION OF PROSPECTIVE RELIEF:

25. The provisions of this Stipulation shall terminate, upon motion of any party or intervenor, two years after this Stipulation is approved by the Court, unless the Court makes written findings, based on the record, that prospective relief: (a) remains necessary to correct a current and ongoing violation of the Plaintiff class' constitutional rights; (b) extends no further than necessary to correct such violation; and (c) is narrowly drawn and the least intrusive means to correct such a violation.

## EFFECTIVE DATES:

26. Unless otherwise stated, the terms of this Stipulation shall take effect or apply upon entry of an order of the Court approving the terms of this Stipulation.

Dated:  New York, New York
        June 17, 1999

THE LEGAL AID SOCIETY
Criminal Defense Division
Special Litigation Unit
Attorney for the Plaintiffs
90 Church Street, 15th Floor
New York, NY 10007
(212) 577-3554

By: _____
Susan L. Hendricks (SH1114)
William Gibney (WG1635)

MICHAEL D. HESS
Corporation Counsel of the
City of New York
Attorney for the City Defendants
100 Church Street, Room 2-111
New York, New York 10007
(212) 788-0960

By: _____
Julie E. O'Neill (JO2395)
Alessandra F. Zorgniotti (AZ6233)
Assistant Corporation Counsel

Lankler Siffert & Wohl, LLP
Attorneys For the Plaintiffs
500 Fifth Avenue, 33rd Floor
New York, NY 10110
(212) 921-8399

By: _____
Roderick C. Lankler (RCL9311)
Lisa A. Baroni (LB6110)

SO ORDERED:

_____
U.S.D.J.

-15-



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CORALYN GRUBBS, LEWIS SMITH, ALI
RIVERA, and SEAN MILLER, individually and
on behalf of all other persons similarly situated,

                          Plaintiffs,

- against -

HOWARD SAFIR, in his official capacity as
Police Commissioner of the City of New York;
NEW YORK CITY POLICE DEPARTMENT;
BERNARD KERIK, in his official capacity as
Commissioner of Correction of the City of New
York; NEW YORK CITY DEPARTMENT OF
CORRECTION; RUDOLPH GIULIANI, in his
official capacity as Mayor of the City of New
York; and THE CITY OF NEW YORK,

                          Defendants.

------------------------------------------------------------x

ORDER APPROVING
STIPULATION OF
SETTLEMENT AND
FINAL
JUDGMENT

92 Civ. 2132 (DC)

        Counsel for the parties having jointly sought, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, approval by this Court of the Stipulation of Settlement entered into by the parties and dated June 17, 1999 ("Settlement"); and the Court, by order dated June 29, 1999, having directed that notice be given to the class in the manner set forth in the order and that a fairness hearing be held on September, 17, 1999, at 9:30 a.m., in Courtroom 11A of the courthouse for the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York; and the Court, on September 17, 1999, having conducted a fairness hearing to determine whether the proposed settlement is fair, reasonable,

and adequate; and the Court having found the Settlement to be fair, reasonable and adequate and approved the settlement for the reasons set forth at that hearing;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Settlement is approved and adopted as a judgment of this court; that plaintiffs' claims against the defendants are dismissed with prejudice; and that the Court will retain jurisdiction over this action in accordance with the terms of the Settlement.

SO ORDERED:

_____
U.S.D.J.

Dated: New York, New York
September 22, 1999

-2-

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 9/27/99